# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LOPEZ, | 1:08-CV-01651 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| ARNOLD SCHWARZENEGGER, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on December 13, 1991, of second degree murder in violation of Cal. Penal Code § 187, with enhancement for use of a knife. See Respondent's Answer to Petition ("Answer"), Exhibit A. On June 12, 1992, Petitioner was sentenced to serve an indeterminate term of seventeen years to life in state prison with the possibility of parole. Id.

On August 1, 2007, a parole suitability hearing was held before the California Board of

Parole Hearings ("Board") to determine Petitioner's eligibility for parole. See Answer, Exhibit B, Appendix A at p. 1. Petitioner attended the hearing and was represented by his attorney. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for five years. Id. at 56.

On March 6, 2008, Petitioner filed a petition for writ of habeas corpus in the Stanislaus County Superior Court challenging the Board's decision. Id. On April 1, 2008, the petition was denied in a reasoned decision. See Answer, Exhibit C. On April 15, 2008, Petitioner filed a habeas petition in the California Court of Appeals, Fifth Appellate District. See Answer, Exhibit D. The petition was summarily denied on April 25, 2008. See Answer, Exhibit E. Petitioner then filed a habeas petition in the California Supreme Court on May 7, 2008. See Answer, Exhibit F. The petition was summarily denied on October 28, 2008. See Answer, Exhibit G.

On October 29, 2008, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition challenges the 2007 decision of the Board denying parole. Petitioner contends the decision was not supported by some evidence. He further contends he received ineffective assistance of counsel. He also alleges the panel was partial and unfair. Last, he takes issue with the Board's decision to deny rehearing for five years. On March 30, 2009, Respondent filed an answer to the petition. Petitioner filed a traverse on April 22, 2009.

## FACTUAL BACKGROUND[1]

On June 25, 1991, at approximately 11:00 p.m., the Stanislaus County Sheriff's Department was notified of a disturbance involving an assault in the area of East Zeering and Gratton Road in the city of Denair. Upon arriving at the location, deputies conducted an examination of the area and they quickly detected the presence of an injured male adult, later identified as James Turnbough, lying on the westbound lane of East Zeering Road. As deputies approached Mr. Turnbough, they observed the victim to be bleeding profusely from wounds to the upper torso. Emergency medical personnel arrived at the scene and transported the victim to Memorial North Hospital in Modesto. Shortly after arriving at the hospital, the victim was

---

[1]The information is derived from the factual summary as set forth in the parole hearing proceedings. See Answer, Exhibit B, Appendix A at 21-23.

pronounced dead due to stab wounds to the stomach, chest, and back.

Immediate and subsequent investigation by the Stanislaus County Sheriff's Department personnel was conducted and revealed the following information surrounding the death of James Turnbough. On June 25, 1991, the victim was involved in a verbal and physical altercation with Johnny Amaral, at the Denair Community Center located on Alameda Street in the city of Denair. A physical altercation which involved a fist fight between the two parties continued until Petitioner intervened and separated the two combatants. The victim and Amaral separated for a brief period of time and after an exchange of verbal threats an additional physical encounter began. Information suggests that as the physical altercation continued, Petitioner approached the victim from the rear. Petitioner then joined Amaral in the assault and at this time Petitioner began striking the victim on the back, stomach, and chest with a sharp object. The altercation ultimately came to an end and Petitioner and Amaral fled the area.

On June 26, 1991, an autopsy of the victim was performed. The results of the examination revealed the victim was stabbed a total of 13 times with a sharp, single-edged knife. The cause of death was determined to be stab wounds to the chest. Investigative results indicate that Petitioner, Amaral, and several other individuals fled in the vehicle after the incident. During the flight, Petitioner was questioned by associates about the incident and the use of the knife. Information suggests that upon being confronted, Petitioner exclaimed, "If anybody fucks with my family members, I'll stab them. I don't care."

**DISCUSSION**

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

1 provisions.

2     Petitioner is in custody of the California Department of Corrections pursuant to a state
3 court judgment. Even though Petitioner is not challenging the underlying state court conviction,
4 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the
5 threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
6 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
7 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
8 state prisoner in custody pursuant to a state court judgment, even when the petition is not
9 challenging [her] underlying state court conviction.'").

10     The instant petition is reviewed under the provisions of the Antiterrorism and Effective
11 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
12 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
13 adjudication of the claim "resulted in a decision that was contrary to, or involved an
14 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
15 of the United States" or "resulted in a decision that was based on an unreasonable determination
16 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
17 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

18     As a threshold matter, this Court must "first decide what constitutes 'clearly established
19 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
20 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
21 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
22 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
23 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
24 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

25     Finally, this Court must consider whether the state court's decision was "contrary to, or
26 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
27 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
28 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision and presume it adopted the reasoning of the Los Angeles County Superior Court, which was the last state court to issue a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.   Review of Petition

A parole release determination is not subject to all the due process protections of an

5

adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, however, an inmate is entitled to the following: 1) The inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) The inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) If the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

In this case, it is clear these minimal due process protections were not met. Petitioner was given advance written notice of the hearing and was provided a written decision explaining why he did not qualify for parole, but, as will be discussed below, he was not provided an opportunity to be heard.

At approximately 4:45 p.m. on August 1, 2007, Petitioner's hearing commenced. Immediately, Petitioner notified the Board that he was not feeling well. See Answer, Exhibit B, Appendix A at 3. He explained that he suffered from hepatitis-C, had been experiencing pain for the past three hours, and had asked staff to be taken back to his cell. Id. He stated that his head was pounding and he felt dizzy and light-headed. Id. at 4. He stated that he could not participate in the hearing and asked that he either be taken back to his cell to lie down or that he be taken to a nurse, or both. Id. The presiding commissioner inquired into Petitioner's hepatitis-C condition, because the condition was not noted in the files. Id. Petitioner explained that he was not yet on medication because he was waiting for the results of a liver biopsy, but his "enzymes and stuff go up and down, up and down, and, at times, I just get drained and I can't think properly...." Id. The commissioner then asked what Petitioner had eaten that day, and Petitioner stated he hadn't consumed a full meal since 4:00 p.m. the previous evening, which was approximately 25 hours prior to the hearing. Id. Petitioner stated he had only eaten some oatmeal at 8:00 in the morning,

because he "wasn't expecting to be here all day." Id. He further stated he had only been given a sack lunch about 20 minutes before the hearing commenced at 4:45 p.m. Id. at 5. Petitioner repeatedly stated that he wasn't feeling well enough to participate and objected to proceeding further. Id. at 11. Petitioner asked to be taken back to his cell and was escorted out. Id. at 16. The Board then proceeded in absentia.

Given the facts of that morning, it is apparent the Board did not provide Petitioner with an opportunity to be heard, as is required under the Constitution. Petitioner was placed in a small holding cage where he remained for nearly nine hours. During that time, he was provided with one sack lunch which was only given to him after being in the cage for eight hours. Petitioner notified prison staff at some point during mid-day that he suffered from hepatitis-C and was not feeling well, and he asked to be taken back to his cell. Nevertheless, he remained there for another three or four hours. It is apparent from the record that his complaints were ignored and he was never provided medical attention to determine the extent of his medical problems.

The Board considered Petitioner's medical complaints but determined that Petitioner was merely stalling. As Petitioner correctly points out, however, the presiding commissioner was not a medical doctor, and Petitioner had not been examined by medical staff that day. In light of the circumstances, his complaints were reasonable and should have at least been medically verified, or the Board could have postponed the hearing until Petitioner's complaints were resolved or medically determined to be unfounded.

In light of the above, this Court concludes that the state court's determination that Petitioner was provided with his minimum due process rights as constitutionally required was contrary to clearly established Federal law, as determined by the Supreme Court in Greenholtz. 442 U.S. at 16.  28 U.S.C. § 2254(d). The petition should be granted, and Respondent should be directed to promptly provide Petitioner with a parole consideration hearing in accordance with the Constitution, or Petitioner should be released. Belk v. Purkett, 15 F.3d 803, 815 (8th Cir.1994); Ford v. Wainwright, 549 F.2d 981, 982 (5th Cir.1977).

///

///

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be GRANTED;

2. Respondent be ORDERED to release Petitioner unless Respondent provides Petitioner with a parole consideration hearing in accordance with the Constitution within sixty (60) days of the date of service of this Order.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   August 14, 2009              /s/ Sandra M. Snyder
                                      UNITED STATES MAGISTRATE JUDGE